Thomas W. Busche, Jr., Petitioner *v.* Workmen's Compensation Appeal Board (Townsend and Bottum, Inc. et al.), Respondents.

Argued May 12, 1983, before Judges BLATT, MAC-PHAIL and BARBIERI, sitting as a panel of three.

470

*Ernest B. Orsatti, Jubelirer, Pass & Intrieri, P.C.,* for petitioner.

*Stewart H. Harn,* with him *Fred C. Trenor, Meyer, Darragh, Buckler, Bebenek & Eck,* for respondent, Townsend and Bottum, Inc.

*Martin K. Brigham,* with him *Joseph Lurie, Galfand, Berger, Senesky, Lurie & March,* for Amicus Curiae, Pennsylvania ALF-CIO.

OPINION BY JUDGE BARBIERI, October 13, 1983:

Claimant in this Workmen's Compensation case, Thomas W. Busche, Jr., appeals to this Court from an order of the Workmen's Compensation Appeal Board, affirming a referee's denial of his petition for reinstatement, as of May 14, 1979, of compensation payments by his employer, Townsend & Bottum, Inc. Claimant was originally awarded compensation for total disability as the result of a heart attack suffered when lifting heavy cylinders weighing approximately one hundred fifty pounds. He underwent coronary by-pass surgery, was paid compensation from May 15, 1975 through November 18, 1975, and on that date,

while continuing to be disabled, was reemployed at a light duty post in a job created for him by his employer who discontinued payments of compensation as of November 18, 1975. While the referee states that "compensation benefits were suspended" on November 19, 1975, the record contains no indication that a suspension agreement was entered into,[1] nor is there any evidence of any other authorized basis for discontinuing payments.[2]

At the first hearing held before the referee, on December 12, 1979, the referee stated that since Claimant was seeking reinstatement of compensation as of May 15, 1979, asserting that he could no longer perform his usual work as a plumber, the burden was on the Claimant. The referee's significant findings are as follows:

> 4. On November 19, 1975, Claimant's compensation benefits were suspended when he re-

---

[1] *See* Section 408 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §732. The referee, at a hearing on December 12, 1979, stated that "suspension of compensation benefits were entered on November 20, 1975.'

[2] When compensation is payable under an agreement or award, this status of liability continues irrespective of whether or not payments have ceased to be made. *See Lucas v. Walters Milling Co.*, 116 Pa. Superior Ct. 171, 176 A. 78 (1935) ; *Furman v. Standard Pressed Steel Co.*, 111 Pa. Superior Ct. 44, 169 A. 243 (1933) ; *Peiffer v. Kreider*, 111 Pa. Superior Ct. 30, 169 A. 399 (1933).

We do not reach the question of whether or not there was an illegal, unilateral cessation of payments in this case, but note that Section 413(b) of the Act, 77 P.S. §774.1, provides that "[a]ny insurer who suspends, terminates or decreases payments of compensation without submitting an agreement or supplemental agreement therefor . . . or a final receipt . . . or without filing a petition . . . shall be subject to penalty as provided in section 435." *See Department of Labor & Industry v. Wormen's Compensation Appeal Board*, 41 Pa. Commonwealth Ct. 456, 399 A.2d 1145 (1979).

In any event, whether the employer simply stopped making payments because of the job created for Claimant, or whether there was an authorized suspension agreement, properly executed under Section 408, the result would be the same.

turned to work on light duty status in a special job which was created for the Claimant by Defendant.

5. The job which the Claimant performed from November 19, 1975, until May 14, 1979, required an insignificant amount of physical exertion.

. . . .

7. Your Referee finds as a fact that the Claimant has not suffered a recurrence of total disability and loss of earning capacity as of May 15, 1979, due to his injury of March 7, 1975.

The referee denied relief. On appeal, the Board, relying upon our decision in *Grimm v. Workmen's Compensation Appeal Board,* 61 Pa. Commonwealth Ct. 582, 434 A.2d 879 (1981), affirmed the referee's denial. Since we find a misconception on the part of both the referee and the Board as to the burden of proof where payments are discontinued without a final receipt or other authorized termination device provided for under the Act, and because the record is uncontradicted that Claimant is entitled to resumption of total disability payments as of May 14, 1979, we will reverse.

Claimant's sole employment since 1947, his present age being 58, has been that of a plumber which admittedly is work that he has not been able to perform since he returned to the "made" job in November of 1975. He was paid plumber's wages and, therefore, suffered no loss in earnings until the job was phased out and he was asked to return to his former heavy plumbing work as of May 14, 1979.[3] Admittedly, he is

---

[3] Of course, Claimant's employer having paid for Claimant's limited, reemployment services, wages equivalent to those paid for his regular plumber services, is relieved of responsibility to pay compensation in any amount during the period November 19, 1975 through May 14, 1979. Section 306(b) of the Act, 77 P.S. §512.

unable to perform that prior work and the employer has not seen fit to find other employment for him since the lay off of May 14, 1979. The duties of the make work job were described by the Claimant as follows:

Q. What type of work were you doing?

A. Working in the warehouse.

Q. Doing what?

A. Filling out requisitions, signing my name and making sure they got the right material.

Q. What type of physical activity was involved?

A. All I did was sign material slips and give small tools out.

During the period of Claimant's performance of this light duty task, following by-pass surgery to a coronary artery, he remained under the care of his cardiologist. The physician, Dr. Frederick R. Franke, a cardiologist with exceptionally outstanding qualifications in his speciality, gave testimony in two depositions made part of the record before the referee. He testified that, despite the by-pass surgery, Claimant continued to suffer coronary artery obstructions incurred in the injury of March 7, 1975. He testified unequivocally that the Claimant was "permanently and completely disabled from being able to engage in his regular occupation," and that his disability had increased since May of 1979. On the recall of Dr. Franke on deposition, requested by the defendant, it was noted that Dr. Larry Hurwitz, a cardiologist who examined Claimant on behalf of the insurance carrier, had the same opinion as to Claimant's condition as that expressed by Dr. Franke.[4]

---

[4] The record does not reveal that Dr. Hurwitz testified, although defense counsel seems to indicate that he did. It was defense counsel who stated that Dr. Hurwitz's testimony contained the same opinion as that expressed by Dr. Franke.

Thus, we have an uncontradicted record establishing that the Claimant is so disabled as to be unable to perform his regular work and unable to perform any work whatsoever except such as might be created for him as was provided by the instant employer during the period from November 19, 1975 to May 14, 1979. Since this specially made job was discontinued by the employer and no other such job within Claimant's limited capabilities was offered or indicated, an order to continue total disability payments must be entered.

In our Supreme Court's opinion in *Unora v. Glen Alden Coal Co.*, 377 Pa. 7, 104 A.2d 104 (1954), the following pertinent statement appears:

> Where the injured person can handle only a specially created job, one light of effort and responsibility but laden with rest and comfort (employment plums that do not often dangle from the tree of everyday economics) the burden is on the defendant/employer to show that such a job is in fact within reach. If proof of the fact is not presented, the claimant is entitled to a finding of total disability.

*Id.* at 13, 104 A.2d at 107.

Also, in cases such as this one, whether unauthorized cessation of payments took place or there was a suspension agreement, if it is shown in the reinstatement proceeding that Claimant's total disability continued, relieved only by his period of reemployment in a "specially created job," proof of the discontinuance of such employment is Claimant's only burden and an employer who chooses not to continue payments must then, as stated in *Unora*, assume the burden to establish the existence of the selective type job that Claimant is able to perform. *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968); *Petrone v. Moffat Coal Co.*, 427 Pa. 5, 233 A.2d 891 (1967).

To rule otherwise, at least in a case such as this one, would inflict upon the Claimant the futility of proving existing and uncontradicted facts. In passing, we note that *Grimm* relied upon by the Board, apparently for the referee's and Board's view that the burden was on Claimant to prove that his condition had worsened or recurred,[5] is totally inapposite. In fact, in that case claimant was petitioning for reinstatement of benefits one month after an unappealed termination order had been entered by a referee. Obviously, in such case, the burden was as much on the claimant there as it is on the defendant in this case where the prior referee's order has been for total disability payments, with no authorized basis for reduction thereafter. Likewise, we see misplaced reliance by respondents upon the case of *Cerny v. Schrader & Seyfried, Inc.,* 463 Pa. 20, 342 A.2d 384 (1975), and other similar cases. In *Cerny,* Claimant, as in *Grimm,* had the burden of overcoming an existing order of a referee reducing liability from total to partial disability without appeal. As noted, in such cases the burden is unquestionably on the claimant as the person trying to change a previously established and legally authorized status. In this case, on the contrary, under Section 413 of the Act, 77 P.S. §722, Claimant simply must show that, while his disability has continued, his loss of earnings has recurred.

Since we must reverse, we will remand for the entry of an order reinstating compensation payments on or after May 14, 1979, for the payment of counsel fees

---

[5] While we see no duty upon the Claimant, as the referee s finding No. 7, quoted herein, would seem to indicate, to prove a "recurrence of total disability and loss of earning capacity as of May 15, 1979," if there was the need to show such an increase or recurrence in disability, it should be noted that the record is uncontradicted that the Claimant has suffered an increase in disability and recurrence of total disability since compensation was last paid.

and costs as set forth in the referee's sixth and eighth Findings of Fact and for the payment of Claimant's medical treatment and services as required under the Act.

## ORDER

Now, October 13, 1983, the order of the Workmen's Compensation Appeal Board dated January 28, 1982 at Docket No. A-80073, is reversed, and the record in this case is remanded to the Workmen's Compensation Appeal Board for an award of benefits and costs in accordance with the provisions of the opinion above. Jurisdiction relinquished.