Nicholas Palmiere, Petitioner *v.* Workmen's Compensation Appeal Board (East End Trucking), Respondents.

· Submitted on briefs March 11, 1985, to Judge MacPhail, and Senior Judges Blatt and Barbieri, sitting as a panel of three.

*Paul F. Laughlin, Laughlin, Dixon & Schlass,* for petitioner.

*Lawrence J. Baldasare, Meyer, Darragh, Buckler, Bebenek & Eck,* for respondent, East End Trucking.

Opinion by Judge Blatt, August 14, 1985:

Nicholas Palmieri (petitioner) appeals here from an order of the Workmen's Compensation Appeal

Board (Board) which reversed a referee's decision lifting the suspension of his disability benefits.

The petitioner, while employed as a truck driver and loader for East End Trucking (employer), a moving company, suffered a work-related injury on July 3, 1975. The parties thereafter executed various supplemental agreements and final receipts, culminating in a supplemental suspension agreement effective February 2, 1976. On that date the petitioner returned to work for the employer at a light-duty job at his former wages, the parties having agreed that he continued to sustain an undetermined partial disability.[1] The employer terminated this light employment in May 1976, being unwilling to pay the petitioner his former wages while he was unable to perform the heavy work required of a moving man. The petitioner thereafter purchased a small grocery store franchise, and was able to perform the less strenuous duties involved therein, but he lost that business in May 1979. He subsequently filed a petition for reinstatement of compensation on the basis that he remained unable to return to work as a moving man and that he had been unable to obtain any work since he lost his grocery job. At the time of the referee's hearing, the Petitioner was able to perform some limited work, but the employer failed to prove that such work was available to him. The referee concluded, therefore, that the petitioner was entitled to have the suspension set aside.

---

[1] Because a claimant's partial disability compensation is based upon the difference between his wages as an injured worker and his earning capacity, as indicated by his pre-injury wages, compensation may properly be suspended when the post-injury earnings equal or exceed the wages previously earned. *See* Section 306(b) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §512.

The employer appealed to the Board, which determined that the petitioner had the burden of establishing that his disability increased or recurred subsequent to the suspension agreement, and accordingly concluded that the referee erred in finding that the petitioner had met his burden of proof. It stated further that a mere showing of a change in economic circumstances without a corresponding change in physical condition, as in the petitioner's case, is an insufficient basis on which to reinstate benefits, and thus reversed the referee's decision.

The petitioner, citing *Busche v. Workmen's Compensation Appeal Board (Townsend & Bottum, Inc.),* 77 Pa. Commonwealth Ct. 469, 466 A.2d 278 (1983), contends that the Board erred in placing the burden on him to prove that his condition had worsened or recurred, and argues that he merely needed to prove that, while his disability continued, his loss of earnings had recurred. In *Busche,* of course, we held that, where a claimant's disability continued, relieved only by a period of employment in a specially created job, proof of the discontinuance of that position is a claimant's only burden, and that the employer bears the burden of establishing the existence of the type of job that the claimant is able to perform.

The employer argues that *Busche* should be distinguished on three points: 1) because that claimant had been employed by the employer in a "specially created" job; 2) because medical testimony there established an increase or change in that claimant's physical disability; and 3) because the suspension of benefits there had apparently been undertaken without benefit of a suspension agreement or other authorized basis for discontinuing benefits.

Like the claimant in *Busche,* however, the petitioner here returned to light duty status with no loss of wages until the employer ended the position be-

cause the petitioner was unable to do heavy work. We will, therefore, reject the employer's assertion that the job had not been "made" for the petitioner. In *Busche,* moreover, we stated that, where there has been a suspension agreement, the claimant's only burden is to show his continuing disability and that his loss of earnings recurred. Furthermore, the *Busche* claimant's increase or change in his disability was not germane to that decision, and was merely noted in a footnote. We believe, therefore, that *Busche* correctly describes the burden of proof to be followed in an action to reinstate disability payments suspended pursuant to a suspension agreement. *See also Venanzio v. Workmen's Compensation Appeal Board (Eastern Express),* 88 Pa. Commonwealth Ct. 204, 489 A.2d 284 (1985).

The employer further argues that, where a partially disabled employee, such as the petitioner, has been employed by a different employer, and subsequently loses that position, the first employer should no longer have the burden imposed upon it to establish job availability. In *Oshinski v. Workmen's Compensation Appeal Board (Lincoln Bank),* 86 Pa. Commonwealth Ct. 181, 484 A.2d 225 (1984), a disabled claimant was able to reemploy herself six years after she had initially suffered a compensable injury. She then received partial disability payments, which were later properly suspended as a consequence of her earnings exceeding her pre-injury weekly wages. We held there that she was entitled to resumption of compensation benefits when, following her relocation to another area, she was unable to find work within her diminished capacity.[2]

---

[2] In *Oshinski,* we observed that, where a final receipt or termination order has not been entered, but payments halted, as here, based upon the extent of earnings, a different situation is presented, and the burden of proof should be allocated as set forth in *Busche.*

We perceive no reason to reach a different result here, where the loss of the later and less demanding grocery store position was occasioned by economic factors rather than relocation. Contrary to the employer's assertion, it was not discharged from this obligation by virtue of the fact that the petitioner maintained the later employment for a period of three years. We note that Section 306(b) of the Act, 77 P.S. §512, provides for the payment of up to five hundred weeks compensation during a period of partial disability. We have previously held, moreover, that, in computing the period for which compensation for partial disability is payable pursuant to an agreement or award under the Act, periods of suspension when no payments are made because the claimant's earnings equaled or exceeded his pre-injury wages are not to be included, *D&T Brooks, Inc. v. Workmen's Compensation Appeal Board,* 38 Pa. Commonwealth Ct. 223, 392 A.2d 895 (1978). And, Section 413 of the Act, 77 P.S. §772, provides that payments under an agreement or award may be resumed anytime during the period of which partial disability compensation is payable. *D&T Brooks, Inc.* It is apparent, therefore, that the employer here may not be excused from its obligation to establish job availability for the petitioner based upon the fortuitous intervention of the petitioner's later job.

We will, therefore, reverse the Board and reinstate the order of the referee.

ORDER

AND Now, this 14th day of August, 1985, the order of the Workmen's Compensation Appeal Board dated October 31, 1983 in the above-captioned case is reversed and the order of the referee dated July 7, 1982 is reinstated.