559 A.2d 971

**CERTAINTEED CORPORATION and Aetna Casualty & Surety Company, Petitioners,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (WILLIAMS), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 15, 1989.

Decided May 26, 1989.

Petition for Allowance of Appeal Denied Dec. 28, 1989.

312

Daniel K. Deardorff and Martson, Deardorff, Williams & Otto, Carlisle, for petitioners.

Richard W. Rosenblitt and Galfand, Berger, Lurie & March, Philadelphia, for respondent, Paul R. Williams.

Before DOYLE and McGINLEY, JJ., and BARBIERI, Senior Judge.

DOYLE, Judge.

This is an appeal by Certainteed Corporation (Employer) and Aetna Casualty and Surety Company from an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's decision setting aside the final receipt of Paul R. Williams (Claimant) and reinstating his compensation pursuant to Section 434 of The Pennsylvania Work-

men's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 1001. We affirm.

This case first appeared before this Court in 1985. At that time, the original referee found that Claimant sustained a work-related injury on November 22, 1976. As a result of this injury, Claimant was hospitalized in April 1978. He returned to work at the beginning of November 1978 and on November 6, 1978, executed a final receipt. Claimant returned to duty at his previous or higher wages and continued to work until October 2, 1981, at which point he was furloughed (along with forty-nine other employees) because of poor economic conditions. On October 28, 1981, Claimant filed his petition to set aside the final receipt. While Claimant maintained that upon return to work he was placed on light duty assignment, the witness for Employer testified that upon return to work Claimant had the same job title and substantially the same duties as he had prior to his injury. Claimant's doctor testified that Claimant's condition had neither worsened nor improved. The original referee made no findings on whether the doctor's testimony was credible; he did, however, find credible the testimony of Employer's witness and did not find credible the testimony of Claimant with respect to the job duties Claimant maintained he performed upon return to work. The original referee then dismissed Claimant's petition to set aside the final receipt and the Board affirmed.

On appeal, this Court remanded the case for determination of two specific findings: (1) whether Claimant's expert witness, Dr. Butera, was a credible witness; and (2) whether Dr. Butera presented unequivocal medical evidence that Claimant was, in fact, disabled on the date he signed the final receipt.

On remand, the referee found the testimony of Dr. Butera to be credible, and further found that Claimant had *not* fully recovered from his injury when he signed the final receipt on November 6, 1978. As a result, the referee entered a suspension of Claimant's benefits effective November 6, 1978, and reinstated Claimant's total disability

benefits effective October 2, 1981, the date Claimant was furloughed. The Board affirmed the referee's decision and this appeal ensued.

In this appeal, Employer contends that there was insufficient evidence to justify setting aside the final receipt. In order to have a final receipt set aside under Section 434 of the Act, it is the claimant's burden to prove by sufficient credible competent evidence that all disability related to the injury had not, in fact, ceased when the final receipt was executed. *Sheibley v. Workmen's Compensation Appeal Board (ARA Food Services Co.)*, 86 Pa.Commonwealth Ct. 28, 483 A.2d 593 (1984). Additionally, where, as here, a claimant is able to return to work with no loss of earning power and no obvious residual disability, unequivocal medical testimony is required to establish continuing disability. *Dunmore School District v. Workmen's Compensation Appeal Board (Lorusso)*, 89 Pa. Commonwealth Ct. 368, 492 A.2d 773 (1985).

The record before us reveals that Claimant was initially treated by Dr. Herman Gailey who died prior to the filing of Claimant's petition. Dr. Butera, Claimant's expert, received and reviewed all of Dr. Gailey's notes and records as well as the records of Employer's physician, who treated Claimant. Dr. Butera also made an independent diagnosis when he began treating Claimant in August 1979. Dr. Butera opined that Claimant suffered from "adhesive capsulitis of the shoulder" which was caused by his work-related injury suffered on November 22, 1976. He testified as follows:

A. Doctor, in your opinion, is that what caused the adhesive capsulitis in [Claimant's] case? [Describing Claimant's November 22, 1976 injury.]

A. Yes.

Q. Following your examination of October 28, of 1981, are there any restrictions which you feel are imposed on [Claimant] as a result of the adhesive capsulitis?

A. We supported restrictions on [Claimant] from early on, shortly after the time of our initial evaluation. This

was a continuation of a light duty status that had been recommended by Dr. Gailey.

After examining [Claimant] initially, I felt those recommendations were appropriate, and continued them indefinitely.

Q. And what were those restrictions? Do you have those restrictions?

A. Specifically, we indicated that [Claimant] would be unable to use the involved right upper extremity in certain ways.

We suggested that he would be able to frequently lift no more than 5 pounds with his right arm.

We recommended that occasionally he could lift up to 15 pounds, and also carry that amount of weight in the right arm.

We recommended that given the restriction of shoulder motion, that he was unable to carry out any repetitive activity. Also because of the restricted shoulder motion he would be unable to carry out any activity which required overhead use of the arm.

Q. These are the restrictions which you would impose at what time?

A. We felt that these restrictions should be imposed from the time of my initial evaluation. I also felt that in essence they were a continuation of restrictions that had previously been imposed by Dr. Gailey.

Q. And are these restrictions still imposed?

A. Yes, they are.

Q. And, to clarify, these restrictions are imposed as a result of which condition?

A. The adhesive capsulitis.

Dr. Butera further testified that if Claimant attempted to perform his preinjury job as a janitor, it would result in even further restriction in his shoulder motion.

We hold that this medical testimony is unequivocal and is sufficient to establish Claimant's continuing disability.

Thus, it is legally sufficient to support the referee's decision to set aside Claimant's final receipt.

Employer also contends that the referee committed error when he reinstated Claimant's benefits upon Claimant's furlough since Claimant had been, as the original referee had found, capable of performing his time of injury job when he had returned to work after signing the final receipt. Again, this Court cannot agree with Employer's argument.

In his order, the referee suspended Claimant's benefits effective November 6, 1978. It is well settled that where there is a work-related partial disability which does not manifest itself in a loss of earning power, *i.e.,* where the employee receives as much for his or her services as he/she earned before the injury, payments of compensation must be suspended. *Cannon Boiler Works, Inc. v. Workmen's Compensation Appeal Board,* 58 Pa.Commonwealth Ct. 546, 428 A.2d 293 (1981). Section 413 of the Act, 77 P.S. § 772, provides, however, that a reinstatement of a claimant's benefits is appropriate when compensation has been suspended and the claimant is no longer able to earn wages equal to or in excess of his preinjury wages. Moreover, when a claimant seeks to have his or her suspension lifted, *i.e.,* to have the benefits reinstated, that claimant is only required to show that the reason for the suspension no longer exists. *Busche v. Workmen's Compensation Appeal Board (Townsend and Bottum, Inc.),* 77 Pa.Commonwealth Ct. 469, 466 A.2d 278 (1983). Specifically, the Claimant has the burden to show only that he has remained disabled and that the disability has manifested itself in a loss of earning power. *Id.; Venanzio v. Workmen's Compensation Appeal Board (Eastern Express),* 88 Pa.Commonwealth Ct. 204, 489 A.2d 284 (1985).

Here, Claimant's benefits were suspended at the time Claimant was furloughed from his preinjury job due to economic conditions and Claimant has adequately shown that he was unable to secure employment within his physical limitations due to his work-related disability. Thus,

Claimant has met the *Busche/Venanzio* burden and the referee properly reinstated the benefits.

Employer, however, challenges the referee's reinstatement since Claimant had originally returned to his *preinjury* job rather than to light-duty work. This Court recently rejected Employer's argument in *Fells v. Workmen's Compensation Appeal Board (Caterpillar Tractor Co.)*, 122 Pa.Commonwealth Ct. 399, 552 A.2d 334 (1988), wherein we stated, "[w]e do not believe that there is a viable distinction, for the purposes of workmen's compensation, between claimants who are under suspension agreements and capable of returning to their preinjury jobs, and claimants who are under suspension agreements and able only to return to a modified or light-duty job." *Id.*, 122 Pa.Commonwealth Ct. at 402–403, 552 A.2d 335–336. *Accord Scobbie v. Workmen's Compensation Appeal Board (Greenville Steel Car Co.)*, 118 Pa.Commonwealth Ct. 424, 545 A.2d 465 (1988); *Andersen v. Workmen's Compensation Appeal Board (National Forge Co.)*, 113 Pa.Commonwealth Ct. 601, 537 A.2d 971 (1988). Our decision in *Fells* is controlling here and therefore we reject Employer's argument.[1]

Based upon the foregoing opinion, we affirm the order of the Board.[2]

## ORDER

NOW, May 26, 1989, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

1. Employer cited to both *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968), and *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), for the proposition that an employer does not have the burden to prove job-availability unless Claimant cannot perform his *preinjury* job. We have closely reviewed these cases and find that the narrow issue before us, namely, whether or not in the context of an attempt to reinstate a suspension the Claimant was able to perform his preinjury job, was not specifically considered. This issue was, however, specifically dealt with by our Court in *Fells.*

2. We disagree with Claimant that Employer had no basis for appeal and we decline to award Claimant's request for attorney's fees.