601 A.2d 879

**Myra WELLS–MOORE, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (McNEIL CONSUMER PRODUCTS CO.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 19, 1991.

Decided Jan. 3, 1992.

384

Kathleen Kennedy, for petitioner.
Daniel T. Lewbart, for respondent.

Before McGINLEY and BYER, JJ., and BARRY, Senior Judge.

BYER, Judge.

Ms. Myra Wells–Moore (claimant) appeals the order of the Workmen's Compensation Appeal Board (WCAB) affirming the referee's decision dismissing her reinstatement petition and granting the termination petition of employer McNeil Consumer Products Company (McNeil). Because the referee failed to resolve crucial fact issues, we vacate and remand for further necessary fact-finding.

In 1987, claimant was employed full-time by McNeil as a computer operator. At the same time, she also worked full-time for Amtrak as an associate systems software engineer.[1] On November 13, 1987, claimant sustained a work-related injury when she slipped and fell in McNeil's parking lot. Claimant received disability benefits at the rate of $336.90 per week, based solely on her salary at McNeil.

Claimant received benefits until April 23, 1988, when she returned to McNeil for part-time, light-duty work. Renewed pain forced claimant to leave McNeil, and her benefits were reinstated until November 14, 1988, when once again, claimant attempted to return to a light-duty position at McNeil. However, at the end of her shift on November 14, 1988, claimant was terminated. Throughout this entire period, claimant continued her employment with Amtrak.[2]

Claimant filed a reinstatement petition asserting a recurrence of her disability as of November 15, 1988. Some time later, McNeil filed a petition for termination, alleging that claimant had fully recovered from her work injury as of October 6, 1988. The petitions were consolidated, and after

1. Prior to her injury, claimant worked the first shift at Amtrak; this required her to work from 7:00 AM until 2:00 PM. At McNeil, claimant worked the second shift, from 4:00 PM until 12:00 AM. Thus, she was able to hold two full-time jobs simultaneously.

2. In actuality, claimant was forced to miss work at Amtrak on numerous occasions as a result of her injury at McNeil. Nevertheless, she still retains this position, and has even received a promotion. (Anbari Deposition, 19–20; N.T. January 17, 1989, 16–17).

conducting several hearings, at which both parties presented evidence, the referee dismissed claimant's petition for reinstatement and granted McNeil's petition for termination to the extent that claimant's benefits were suspended as of November 14, 1988. The WCAB affirmed the referee's decision and claimant filed the present appeal.

 Initially, we note that in appeals from administrative agencies, our scope of review is limited to a determination of whether constitutional rights have been violated, whether an error of law has been committed or whether the referee's necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704. Where, as here, the WCAB makes no additional findings in its decision on appeal, the referee is the ultimate fact finder, and we must accept the findings as conclusive if they are supported by substantial evidence. *Carrier Coal Enterprises v. Workmen's Compensation Appeal Board (Balla)*, 118 Pa.Commonwealth Ct. 201, 544 A.2d 1111 (1988). Substantial evidence has been defined as such relevant evidence as a reasonable person might accept as adequate to support the conclusion. *Bethenergy Mines v. Workmen's Compensation Appeal Board (Skirpan)*, 132 Pa.Commonwealth Ct. 277, 572 A.2d 838 (1990), *petition for allowance of appeal granted*, 527 Pa. 594, 588 A.2d 915 (1991).

Claimant first argues that the referee's findings of fact 4, 5, and 8 were not supported by substantial evidence. These findings state:

4. The Claimant does not have a psychiatric disorder or condition. The Claimant's annoyance with her physical symptoms is not a real material psychological symptom.

5. The Claimant has recovered sufficiently to perform the job offered to her by the Defendant on 11–14–88 (D–1). This job required Claimant to work only 6 hours a day between 8:00 a.m. and 2:30 p.m. and is not significantly different from the job Claimant holds at Amtrak.

8. The Claimant reported for work on 11–14–88 with the Defendant and did not return thereafter. The Claim-

ant's refusal to continue to work after 11–14–88 was not in good faith.

Referee's decision, June 27, 1990, 2.

■ We add to this list the referee's conclusion of law No. 3 which states:

3. Claimant's refusal to continue with the light-duty job is because it conflicts with her job at Amtrak.

Although the referee has labeled this statement a "conclusion of law," it actually is a finding of fact, and we will consider it as such.[3]

■ With respect to findings 4 and 5, our review of the record reveals that there is substantial evidence to support the referee's findings that claimant was capable of performing the job offered her by McNeil, particularly because her duties there were similar to those she was already performing at Amtrak. The referee reached this conclusion after considering the widely conflicting medical evidence presented by claimant and McNeil.[4]

---

**3.** Whether a statement is a finding of fact or a legal conclusion is not determined by the heading under which the referee places it. *Stevens v. Workmen's Compensation Appeal Board (Pennsylvania Gas and Water Company)*, 124 Pa.Commonwealth Ct. 486, 556 A.2d 522 (1989); *Weaver v. Workmen's Compensation Appeal Board (Ribstone Silos of Pennsylvania)*, 90 Pa.Commonwealth Ct. 262, 494 A.2d 882 (1985).

**4.** Regarding finding 4, each party presented the deposition testimony of a psychiatrist who examined claimant for any psychological disability caused by her injury. McNeil offered the testimony of Wolfrom Rieger, M.D., who testified as follows:

Q. Now, Doctor, in addition, do you have an opinion within a reasonable degree of medical certainty whether the claimant, Ms. Myra Wells[-]Moore, could have returned to the light duty position which was offered her at McNeil Consumer Products on November 14, 1988?
A. Yes, I do have an opinion.
Q. What is that opinion, Doctor?
A. She could have returned to work then and before then.
Rieger Deposition, 29.

A contrary determination was made by Herbert Adler, M.D., who provided deposition testimony on behalf of the claimant:

Q. Doctor, do you have an opinion, to a reasonable degree of medical certainty as to whether or not the Claimant, Myra Wells–Moore could return to her working as a computer operator at the McNeil Consumer Products Company?
A. Yes, I do.

Q. What is that opinion?

A. That she cannot.

Q. What is your basis for that opinion?

A. Because of the pain, anxiety and depression.

Adler Deposition, 12.

As to finding 5, the medical testimony presented regarding claimant's physical capabilities was also in direct conflict. E. Bala, M.D., an orthopedic surgeon, and Earl Byrne, M.D., a physician formerly employed by McNeil to assess employee fitness for an assigned job, testified on McNeil's behalf. Dr. Bala stated:

Q. Doctor, again based on the review of the aforementioned medical reports, are you able to render an opinion within a reasonable degree of medical certainty, whether or not the claimant, Ms. Myra Moore, can return to work in any capacity?

\* \* \* \* \* \*

A. Yes, I felt she could return to work on a moderate capacity as mentioned in the estimated functional capacities form.

Q. Doctor, in addition to your review of the various diagnostic studies which you have mentioned, and the various other medical reports, did you have occasion to review or examine the job the claimant would have performed or attempted to perform on November 14th, 1988, at McNeil Consumer Products?

A. Yes, I reviewed a job description and signed by Dr. Burn [sic], and also return to work memorandum from McNeil signed by Clarence Dyre, dated October 10th, 1988, and also I reviewed a videotape of the job of computer operator at McNeil during the first shift.

Q. And Doctor, based on your review of the job that Myra Moore was asked to perform on November 14th, 1988, at McNeil Consumer Products, were the requirements of that job consistent with your restrictions, your capacities forms that you delineated in your March 11th and May 4th, 1989 report?

A. Yes, they were.

Bala Deposition, 20, 23–24.

This opinion was consistent with Dr. Byrne who testified as follows:

Q. Doctor, based on your initial evaluation of Ms. Moore in September of 1987, your subsequent evaluation of Ms. Moore in November of 1987, and your continuing evaluation to monitor her condition up through and including November of 1988, and in addition your review of Dr. Simeone's medical report, your meetings with Ms. Moore in discussing her restrictions and limitations, do you have an opinion within a reasonable degree of medical certainty whether Ms. Moore could return to her consumer operator position with the restrictions you imposed as of November 14, 1988?

THE WITNESS: Yes, in brief, based on the total collective amount of information that I had from outside consultants plus my own examination plus an on-site review of what her job consisted of plus review of those tasks, those specific tasks with Mrs. Moore and obtaining her agreement of what she could do, I felt it was reasonable to return her to work at that time.

Byrne Deposition, 26–28.

 We cannot reweigh evidence. As ultimate fact finder, it is within the province of the referee to evaluate evidence and accept or reject the testimony of any witness in whole or in part, including that of medical witnesses. *Northeastern Hospital v. Workmen's Compensation Appeal Board (Turiano)*, 134 Pa.Commonwealth Ct. 164, 578 A.2d 83 (1990); *Montgomery County Sheriff's Department v. Workmen's Compensation Appeal Board (Riehl)*, 125 Pa. Commonwealth Ct. 6, 556 A.2d 962 (1989). Moreover, it is for the referee exclusively to determine witness credibility and evidentiary weight in workmen's compensation cases. *Buczynski v. Workmen's Compensation Appeal Board (Richardson–Vicks, Inc.)*, 133 Pa.Commonwealth Ct. 532, 576 A.2d 421 (1990). Here, the referee chose to accept the testimony of Drs. Rieger, Bala and Byrne that claimant was fit to perform the job offered, and to adopt their opinions as the basis for his decision. We do not disturb

---

In support of her reinstatement petition, claimant offered the deposition testimony of her treating physician, Mark Reiner, D.O., an orthopedic surgeon, who stated:

Q. Doctor, do you have an opinion to a reasonable degree of medical certainty as to whether or not the claimant Myra Moore could return to her work duties as a computer operator for the Defendant, do you have an opinion?

A. She is unable to work at this time. I do believe she is completely disabled right now and possibly, you know, surgery may improve her.

Q. Has she been so disabled since the attempt to return to work in November, 1988.

A. I don't recall exactly how long she had tried to return to work whether it was a week or two or three, but she was not able to work, and it just seemed to make her worse and she has been unable to work since that feeble attempt.

MR. LEWBART: When was that feeble attempt?

THE WITNESS: November 14th of '88.

BY MR. PITT:

Q. Doctor, do you have an opinion to a reasonable degree of medical certainty as to whether or not the claimant Myra Moore could currently perform any other type of regular gainful employment, do you have an opinion?

A. I do not think she is able to work right now.

Reiner Deposition, 19–20.

findings 4 and 5 on review.[5]

However, regarding finding 8 and "conclusion of law" 3, we agree with claimant that there is no evidence of record that claimant refused to return to her light-duty job at McNeil after November 14, 1988. On the contrary, rather than indicating that claimant refused to work after November 14, 1988, the record provides undisputed testimony that claimant was dismissed from her position at McNeil and therefore, could no longer report to work.

As the claimant testified:

Q. Okay. And did you continue working after November 14, 1988?

A. No.

Q. And why did you stop working after November 14, 1988?

A. I wasn't able to do all of the duties, and I was terminated.

Q. Okay. Do you know why you were terminated?

A. *They told me I was supposed to be able to do all of the duties and that I had another position and that it wasn't acceptable.*

Q. Okay.

REFEREE PERNA: What date were you terminated?

THE WITNESS: November the 14th, 1988.

N.T. January 17, 1989, 15 (emphasis added).

McNeil's own witness corroborated claimant's testimony. Clarence Dyer, the claimant's supervisor at McNeil from the time of her injury through November 14, 1988, stated:

5. Additionally, we note that although claimant argues strenuously that her duties at Amtrak differed significantly from those required in the job offered by McNeil on November 14, 1988, the record contains substantial evidence to the contrary. Claimant asserts that her position at Amtrak was sedentary and far less physically demanding than the McNeil job. However, the record reveals that claimant's duties at Amtrak were similar in many ways to the tasks expected of her in the *modified* position offered by McNeil.

Q. Mr. Dyer, for how long did Ms. Moore perform her job when she came back to work on November 14th, 1988?

A. One day.

Q. Did she return to work after November 14th, 1988?

A. Not that I am aware of.

Q. And why did she not return to work after November 14th, 1988?

A. She was dismissed.

Q. And why was she dismissed? You can just explain.

A. *It was determined that for the duration of time that she was participating in the Workmen's Comp claim with McNeil she was working full time in another position. Another capacity.*

N.T., October 26, 1989, 20 (emphasis added).

As indicated by this testimony, although the reason for her dismissal may be in question, there is no dispute that claimant was terminated on November 14, 1988.

For this reason, "conclusion of law" 3, actually a finding of fact, is unsupported by substantial evidence. Although claimant admitted that the job at McNeil would conflict with her hours at Amtrak (N.T. January 17, 1989, 18–19), there is no indication in the record that claimant refused to continue with McNeil because of the schedule conflict. In fact, the record indicates that Amtrak could readily accommodate any of claimant's scheduling needs. (Anbari Deposition, 69–70; Rieger Deposition, 10, 35). Rather than consciously refusing to return to work at McNeil, claimant's failure to report to her job after November 14, 1988, was a decision that was forced upon her by her dismissal, and any of the referee's findings to the contrary are unsupported by substantial evidence.

Claimant next argues that the referee erred as a matter of law in concluding that claimant's benefits should be suspended as of November 14, 1988, in view of the fact that claimant produced evidence that she remained disabled at

the time of her dismissal, while McNeil failed to provide evidence of suitable work that was actually available.

In this regard, the referee reached the following conclusions of law: ·

1. The claimant has failed to show that she is entitled to a reinstatement of compensation.

2. Defendant has shown that the claimant has recovered sufficiently to perform a lighter duty job. Such a job was offered to the claimant and claimant failed to exercise good faith in refusing to continue at such job for more than one day.

First, we consider the second conclusion of law. Based on the previous discussion, we cannot agree that claimant failed to exercise good faith in refusing to return to her job at McNeil. As we have already stated, although there is evidence that claimant had recovered sufficiently to perform the duties assigned to her in the modified position that was offered, she failed to report after November 14, 1988 because she was fired.

■ Claimant also contends that she satisfied the burden required to justify a reinstatement of benefits. The WCAB relied on *Memorial Osteopathic Hospital v. Workmen's Compensation Appeal Board,* 77 Pa.Commonwealth Ct. 518, 466 A.2d 741 (1983) and required claimant to establish that her physical condition had actually changed in some manner; that is, that her disability had worsened or recurred. Claimant argues, however, that her only burden was to show that while her disability continued, her loss of earnings recurred. We agree.

In *Memorial Hospital,* we held that in a reinstatement petition, following a *termination* of benefits, claimant must prove that a disability increased or recurred after the date of the prior award. However, in this case, claimant's benefits were *suspended* because she resumed modified employment at no loss in wages. "[T]he burden of proof on a claimant who petitions for reinstatement following a suspension is materially different from the burden of proof on

a claimant who petitions for reinstatement following a termination. In the former instance, a claimant is only required to demonstrate that the reason for the suspension no longer exists." *York City School District v. Workmen's Compensation Appeal Board (Peyser)*, 136 Pa.Commonwealth Ct. 110, 582 A.2d 423 (1990), (citing *Venanzio v. Workmen's Compensation Appeal Board (Eastern Express)*, 88 Pa.Commonwealth Ct. 204, 489 A.2d 284 (1985)).

In support of her position, claimant relies on *McAfee v. Workmen's Compensation Appeal Board (Allegheny General Hospital)*, 134 Pa.Commonwealth Ct. 562, 579 A.2d 1363 (1990), in which we held:

> that in a reinstatement proceeding where a claimant petitions to have a suspension lifted, the claimant's only burden is to show that while his disability has continued, his loss of earnings has recurred. Once the claimant has sustained this burden, the burden then shifts to the employer who must either continue compensation payments or demonstrate the existence of a selective type job that the claimant is able to perform. *Busche v. Workmen's Compensation Appeal Board (Townsend and Bottum, Inc.)*, 77 Pa.Commonwealth Ct. 469, 466 A.2d 278 (1983). Furthermore, where there has been a suspension of benefits, as here, there is a presumption of partial disability in favor of the claimant and the only way the employer can eliminate liability is by offering suitable work. *Economy Decorators, Inc. v. Workmen's Compensation Appeal Board (Federici)*, 96 Pa.Commonwealth Ct. 208, 506 A.2d 1357 (1986).

*Id.*, 134 Pa.Commonwealth Ct. at 569, 579 A.2d at 1367. *See also Palmiere v. Workmen's Compensation Appeal Board (East End Trucking)*, 91 Pa.Commonwealth Ct. 137, 496 A.2d 918 (1985).

Based on this language from *McAfee*, claimant asserts that she easily satisfies her burden of proof because there is a presumption that she remains partially disabled, while her termination establishes a renewed loss of earnings.

Beyond the well-established presumption of partial disability that accompanies a suspension of benefits, *see Baughman v. Workmen's Compensation Appeal Board (Laurel Environmental Services, Inc.),* 121 Pa.Commonwealth Ct. 627, 550 A.2d 1051 (1988), *petition for allowance of appeal denied,* 525 Pa. 613, 577 A.2d 545 (1989); *Scobbie v. Workmen's Compensation Appeal Board (Greenville Steel Car Co.),* 118 Pa.Commonwealth Ct. 424, 545 A.2d 465 (1988), *petition for allowance of appeal denied,* 522 Pa. 607, 562 A.2d 829 (1989); *York City,* all the medical evidence presented supports claimant's inability to perform her time-of-injury duties.[6] However, claimant's dismissal does not automatically satisfy the required proof of loss of earnings.

Section 413 of the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772, empowers the referee to reinstate benefits by providing:

> [W]here compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, *unless it be shown that the loss in earnings does not result from the disability due to the injury.* (emphasis added).

In keeping with the language in this section of the act, we have held that where a claimant seeks a reinstatement of suspended benefits, in addition to proving that he continues to suffer from a work-related injury, the claimant also must show that the reoccurring loss of earnings is attributable to the injury rather than some other source. *Barrett v. Otis*

---

**6.** In *Smith v. Workmen's Compensation Appeal Board (Futura Industries),* 80 Pa.Commonwealth Ct. 508, 471 A.2d 1304 (1984), we held that an employee who petitions for reinstatement of suspended benefits must show that he or she is unable to perform the job held at the time of the original injury. Although the medical experts in this case differed regarding claimant's physical capabilities, even those experts found credible by the referee agreed that claimant had recuperated sufficiently to perform only a modified version of her original job, but as yet was unable to perform at her prior work level.

*Elevator Company,* 431 Pa. 446, 246 A.2d 668 (1968); *Dugan v. Workmen's Compensation Appeal Board (Fuller Co.),* 131 Pa. Commonwealth Ct. 218, 569 A.2d 1038 (1990); *Andersen v. Workmen's Compensation Appeal Board (National Forge Co.),* 113 Pa. Commonwealth Ct. 601, 537 A.2d 971 (1988); *Woodard v. Workmen's Compensation Appeal Board (Kopper's Co., Inc.),* 49 Pa.Commonwealth Ct. 558, 411 A.2d 890 (1980); *PPG Industries v. Workmen's Compensation Appeal Board (Altes),* 12 Pa.Commonwealth Ct. 61, 315 A.2d 906 (1974); *Possumato v. Midvale–Heppenstall Co.,* 4 Pa.Commonwealth Ct. 664, 287 A.2d 915 (1972).

Our interpretation of this provision has not been inflexible. Case law is replete with examples where we have reinstated suspended benefits to employees who were terminated from modified positions for reasons unrelated to their work injuries. However, in all these cases, the termination of employment arose from circumstances that were no fault of the employee.[7] *See e.g., Goodyear v. Workmen's Compensation Appeal Board (Robbins Door and Sash Co.),* 96 Pa.Commonwealth Ct. 647, 508 A.2d 637 (1986) (light-duty job ceased to be available, not because of a change in claimant's physical condition, but because of the economic conditions of his employer); *Smith v. Workmen's Compensation Appeal Board (Futura Industries),* 80 Pa.Commonwealth Ct. 508, 471 A.2d 1304 (1984) (lay-off from modified

---

**7.** We have even expanded this concept in order to reinstate benefits to employees who were capable of returning not only to modified positions but to their pre-injury jobs as well, but were prevented from doing so by circumstances beyond their control. *Fells v. Workmen's Compensation Appeal Board (Caterpillar Tractor),* 122 Pa.Commonwealth Ct. 399, 552 A.2d 334 (1988) (lay-off from pre-injury job); *Baughman v. Workmen's Compensation Appeal Board (Laurel Environmental Services, Inc.),* 121 Pa.Commonwealth Ct. 627, 550 A.2d 1051 (1988), *petition for allowance of appeal denied,* 525 Pa. 613, 577 A.2d 545 (1989) (lay-off from pre-injury job); *Scobbie v. Workmen's Compensation Appeal Board (Greenville Steel Car Co.),* 118 Pa.Commonwealth Ct. 424, 545 A.2d 465 (1988), *petition for allowance of appeal denied,* 522 Pa. 607, 562 A.2d 829 (1989) (plant closing); *Economy Decorators, Inc. v. Workmen's Compensation Appeal Board (Federici),* 96 Pa.Commonwealth Ct. 208, 506 A.2d 1357 (1986) (industry-wide work slowdown).

job due to a downturn in employer's business); *Busche v. Workmen's Compensation Appeal Board (Townsend and Bottum, Inc.)*, 77 Pa.Commonwealth Ct. 469, 466 A.2d 278 (1983) (phasing-out of specially created light-duty job).

We have emphasized that the reason for the job loss can be vital, as illustrated by comparing cases where we have reinstated benefits when the job was eliminated because of factors beyond the employee's control with cases where we denied benefits to workers who were dismissed because of their own actions or misconduct, when the job would have otherwise remained available.[8] *PPG Industries* (voluntary departure from work to become a minister did not entitle claimant to a resumption of compensation while he pursued this career); *Workmen's Compensation Appeal Board v. Galbreath*, 20 Pa. Commonwealth Ct. 283, 341 A.2d 541 (1975) (denial of benefits where discharge was for misconduct rather than disability); *Woodard* (resulting loss of earnings due to discharge for excessive absences, and not shown to have been for any other cause); *Christopher v. Workmen's Compensation Appeal Board (Dravo Corp.)*, 124 Pa.Commonwealth Ct. 562, 556 A.2d 544 (1989) (discharge for non-performance, bad attitude, and problems with expenses rather than claimant's physical complaints or inability to perform his work).

In *Smith*, we recognized that when a partially disabled claimant has been *laid off* from a modified job while still unable to perform the time-of-injury job, the employer then again has the standard burden of proof, to show the availability of work which the claimant is capable of performing. However, in a footnote in *Smith*, we were careful to draw a distinction between that situation in which a claimant was

**8.** Even in such cases, we did not foreclose the possibility of reinstating benefits to an employee who properly established that a renewed loss of earnings was attributable to his or her work-related disability, even if such disability recurred subsequent to a voluntary termination of employment or a dismissal for misconduct. *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (Cochran, Sr.)*, 93 Pa.Commonwealth Ct. 175, 500 A.2d 1279 (1985); *Workmen's Compensation Appeal Board v. John W. Galbreath & Co.*, 20 Pa.Commonwealth Ct. 283, 341 A.2d 541 (1975).

laid off because of economic conditions from one in which the claimant had been discharged for misconduct, or had voluntarily resigned from the position provided by the employer. *See also Shenango v. Workmen's Compensation Appeal Board (Swan)*, 107 Pa.Commonwealth Ct. 254, 528 A.2d 672 (1987).

Quite recently, we added a new dimension to this concept. In *United Parcel Service v. Workmen's Compensation Appeal Board (Portanova)*, 140 Pa.Commonwealth Ct. 626, 594 A.2d 829 (1991), we considered whether an employer could satisfy its obligation to compensate an injured employee by offering a light-duty job, and then fire the employee for misconduct which occurred prior to the work-related injury. Reasoning that to allow this situation to occur created too much potential for abuse, we held that "where claimant is discharged because of misconduct which occurred, not only prior to the injury, but also prior to the payment of benefits and the creation of a light-duty position, a claimant's loss of earnings shall be deemed to have resulted from a disability due to injury." *Id.*, 140 Pa.Commonwealth Ct. at 632, 594 A.2d at 832.

 Here, because claimant was employed by Amtrak when she began to work for McNeil, she was in violation of McNeil's alleged work rule against concurrent employment from her first day on the job, well before her work-related injury and accompanying benefits. Although there is evidence that McNeil was unaware of claimant's dual employment at that time, the record indicates that McNeil may have learned of claimant's second job prior to November 14, 1988. If so, *United Parcel* would control.

 Claimant argues that her dismissal was due, at least in part, to her inability to perform the light-duty work made available to her by McNeil. Moreover, she contends that she was unaware of any company policy against concurrent employment until she was fired for disregarding

that rule.[9] Finally, claimant asserts that McNeil made its offer of modified employment to her in bad faith, because it was already aware that she was employed at Amtrak when the position was offered.

We are unable to review claimant's arguments on appeal because the referee in this case has left crucial issues unconsidered. Therefore, we remand with instructions that the referee make findings on the basis for claimant's discharge and whether McNeil was aware of claimant's alleged violation prior to its creation of claimant's modified position.

## ORDER

We vacate the order of the Workmen's Compensation Appeal Board and remand the case for further proceedings consistent with our opinion. We relinquish jurisdiction.

---

**9.** Claimant notes further that McNeil failed to exercise its opportunity to present evidence of such a policy at any of the hearings. In fact, although McNeil mentioned its policy against moonlighting at the hearings as the reason for claimant's dismissal, we are puzzled by the fact that McNeil failed to make this argument in its brief to this court.