140 Pa. Commonwealth Ct. 626 (1991)
594 A.2d 829
UNITED PARCEL SERVICE, Petitioner,
v.
WORKMEN'S COMPENSATION APPEAL BOARD (PORTANOVA), Respondent.
Commonwealth Court of Pennsylvania.
Argued April 5, 1991.
Decided June 28, 1991.
*627 Cal A. Leventhal, Honesdale, for petitioner.
Frederick J. Fanelli, Pottsville, for respondent.
Before DOYLE and COLINS, JJ., and BARBIERI, Senior Judge.
COLINS, Judge.
United Parcel Service (UPS) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) reversing the decision of the referee and reinstating benefits to Michael J. Portanova (claimant) pursuant to *628 Section 413 of The Pennsylvania Workmen's Compensation Act (Act).[1]
Claimant was employed by UPS as a package delivery man. On October 18, 1985, claimant failed to deliver various packages, indicating on his work records that he could not find the addresses to which the packages were to be delivered. On October 21, 1985, claimant injured his back in the course of his employment. Claimant was off work until October 29, 1985, when he was permitted to return to a light duty position on a part-time basis. On November 6, 1985, he was permitted to return to work full-time but was required to continue in the light duty position. On December 4, 1985, UPS terminated claimant's employment "for dishonesty, failure to follow instructions, and willful misconduct by not completing [his] work assignment."[2]
Claimant filed a petition for reinstatement of compensation on December 11, 1985, and, apparently, UPS filed a petition for termination of compensation on December 6, 1985.[3] Hearings were held on October 14, 1986 and on January 14, 1987. Thereafter, on June 9, 1987, the referee issued his decision denying claimant's petition for reinstatement and granting UPS's petition for termination, pursued in the alternative as a petition for suspension. The referee made the following pertinent findings of fact:
5. Under ordinary circumstances, [UPS's] removal of the specially-created light duty position would entitle the claimant to a presumption of total disability, and a resumption of total disability benefits. See Busche v. W.C.A.B., [77 Pa.Cmwlth. 469] 466 A.2d 278 (1983), and Smith vs. W.C.A.B., [80 Pa.Cmwlth. 508] 471 A.2d 1304. *629 [(1984)] However, [UPS] contends that the claimant was terminated for disciplinary reasons, and that the claimant is not entitled to a resumption of his Workers' Compensation benefits. The claimant contends that he was discharged solely to relieve [UPS] of the responsibility to provide a specially created light duty position to the claimant.
6. The only issue in this claim is whether the claimant was discharged for good cause. Medical testimony presented confirms that the claimant would be unable to perform the position of a package delivery person that the claimant had previously performed for [UPS]. The claimant has presented no medical testimony, and therefore it has not been shown that the claimant is totally disabled.
7. Your Referee finds that the claimant was discharged for good cause, because he had violated the work rules of [UPS], in that he had failed to deliver packages and indicated that he did not know where the consignees lived, despite the fact that the claimant had delivered to those persons on previous occasions. Also, the claimant was insubordinate to his supervisors when confronted with the alleged wrongdoing, and the claimant had been suspended previously for failure to follow methods of delivery in the areas to which he had been assigned. . . .
Both parties timely appealed to the Board, which heard argument and issued its Opinion and Order on April 1, 1988. The Board reversed the decision of the referee and reinstated claimant's benefits.
Characterizing the case as a matter of first impression, the Board stated the issue as follows: "[M]ay an employer satisfy its obligation to compensate by offering a light-duty job and then firing the Claimant for misconduct occurring before his injury?" The Board distinguished the present case from Woodard v. Workmen's Compensation Appeal Board, 49 Pa. Commonwealth Ct. 558, 411 A.2d 890 (1980), wherein this Court affirmed an order of the Board suspending claimant's benefits after he was discharged from a light *630 duty position "for excessive unexcused absences." Id., 49 Pa.Commonwealth Ct. at 559, 411 A.2d at 891. Reversing the referee, the Board stated that "[allowing] an employer to offer a light-duty job to an injured employee and then fire [sic] the individual for behavior prior to his injury, is a situation which has a unique potential for abuse. . . ." The Board also remanded the matter to the referee for the award of costs and attorneys fees.
On April 14, 1988, the referee awarded claimant's attorney 20% of claimant's gross recovery. UPS petitioned for reargument. On July 14, 1988, following reargument, the Board reaffirmed and remanded to the referee in accordance with its April 1, 1988 decision. UPS then petitioned this Court for review, and, by order of November 29, 1988, the petition was dismissed, because the order being appealed was interlocutory. Thereafter, on August 2, 1989, the referee reaffirmed his decision that UPS pay claimant's attorney 20% of claimant's gross recovery. Once again, UPS appealed the referee's decision to the Board, and on October 22, 1990, the Board once again affirmed its decision reinstating claimant's benefits and also affirmed the referee's decision awarding attorneys fees.
UPS then timely filed a Petition for Review with this Court.
UPS sets forth no issue for this Court to review. In its summary of argument, however, UPS states: "It is respectfully submitted that the Board's reversal of the Referee clearly usurps the fact finding power of the Referee on the critical issue as to whether or not the discharge was made in good faith."[4]
*631 "Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence." Mercy Catholic Medical Center v. Workmen's Compensation Appeal Board (Fry), 114 Pa.Commonwealth Ct. 218, 221, 538 A.2d 636, 637 (1988).
UPS urges this Court to reverse the Board, because, according to UPS, the Board ignored the referee's finding that claimant was insubordinate on December 4, 1985; the Board usurped the fact finding power of the referee; and the Board enunciated a new rule of law unsupported by any prior case law. After reviewing the record, we cannot agree that the Board ignored the referee's findings of fact or usurped the referee's fact finding authority. The evidence clearly supports a finding that claimant was discharged for violating the work rules of UPS. Neither the testimony of Frank Steier, Center Manager for UPS, nor the December 4, 1985 discharge letter provide substantial evidence to support a finding that claimant was discharged for insubordination, and Finding of Fact No. 7 does not so state.
UPS correctly asserts that the Board has set forth a new rule of law, and we agree with the Board that allowing an employer to discharge an employee from a light duty position because of misconduct committed prior to the employee's work related injury creates too much potential for abuse. Our review of the record reveals that it is undisputed that UPS discovered claimant's misconduct on the day after it occurred, the same day that he was injured. UPS, however, did not discharge claimant for approximately six weeks, when he was working at his delivery man wages but in a light duty position created for him. Our review also reveals that it is undisputed that UPS did not raise the issue of claimant's misconduct at any time between October 21, 1985, when it occurred, and December 4, 1985, when he was discharged.
*632 Section 413 of the Act states "[t]hat where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments . . . may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury."[5] It is clear from the record that claimant's loss of earnings resulted from his disability due to his injury. Claimant last worked in a light duty position created by UPS for him, and there is substantial evidence in the record to support the referee's Finding of Fact No. 6 regarding claimant's inability to work in his former position of delivery man. This case can be distinguished from Woodard, because the claimant in that case was discharged for misconduct committed while in his light duty position.
Keeping in mind first, that the heavy burden of proof is on UPS[6] who seeks a termination of its liability to pay compensation for claimant's work injury disability, and second, that here, the disability is admitted by UPS, we know of no legal authority or principle that would support a termination of that liability based on UPS' post hoc decision that claimant committed an employment breach prior to his injury. UPS cannot gratuitously meet its burden of proof by terminating claimant's light duty position for a reason totally unrelated to claimant's disability from his work injury. Accordingly, we hold that where, as here, a claimant is discharged because of misconduct which occurred, not only prior to the injury, but also prior to the payment of benefits and the creation of a light-duty position, a claimant's loss of earnings shall be deemed to have resulted from a disability due to injury. In such matters, "the employer [has] its usual burden to show the availability of work performable without a loss of earnings." Shenango, Inc. v. *633 Workmen's Compensation Appeal Board (Swan), 107 Pa.Commonwealth Ct. 254, 260, 528 A.2d 672, 675 (1987).
UPS did not sustain its burden in the instant controversy. Therefore, the decision of the Board is affirmed.

ORDER
AND NOW, this 28th day of June, 1991, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.
DOYLE, Judge, dissenting.
While I agree with the majority that the situation in this case creates the potential for abuse, and that the legal equation introduced is one of first impression, I cannot agree that the solution is to create new law by adopting a strict prophylactic rule because of the possibility of abuse or difficulty with the issue.
First, there is as much potential for abuse one way as there is the other; for example, an employee, once having suffered a compensable injury, might believe  rightly so under the majority's view  that he can do whatever he pleases and not be vulnerable to discharge for willful misconduct.
Second, although certainty in the law is a laudable judicial goal and an appealing avenue of approach in this case, certainty in the law should not have rote mechanical application as a traveling companion when traveling that avenue. This approach, I am afraid, would provide only a facile solution to a complex problem. Suppose, for example, a claimant steals funds from his employer and the police investigation proves beyond doubt that this claimant was the thief. But suppose further that the investigation is completed only after the claimant's injury occurred and partial disability benefits had begun. Under the majority's new rule, the claimant may be prosecuted for the crime, but may not be fired.
*634 The referee in this case correctly posed the issue in his sixth finding:
The only issue in this claim is whether the claimant was discharged for good cause.
He then went on to decide that issue in his seventh finding:
Your Referee finds that the claimant was discharged for good cause, because he had violated the work rules of [UPS].
Referee Wayne R. Rapkin made the hard choice and was not dissuaded from his responsibility because of the difficulty of the issue before him. Nor should we be.
It is clear beyond peradventure that a claimant discharged because of his own misconduct is not entitled to have his compensation benefits reinstated, Crain v. Small Tube Products, Inc., 200 Pa. Superior Ct. 426, 188 A.2d 766 (1963); John W. Galbreath & Co. v. Workmen's Compensation Appeal Board, 20 Pa. Commonwealth Ct. 283, 341 A.2d 541 (1975), and I fail to see how the decision to determine an employer's intent when discharging the claimant  whether for justified willful misconduct or on specious grounds asserted only to deny a claimant's legitimate claim for benefits  is any more or less difficult because the conduct occurs before or after the injury or before or after benefits begin. Either way it is difficult, but I submit it is no more difficult than determining whether an employer had anti-union animus in discharging an employee in a case before the Pennsylvania Labor Relations Board on a charge of an unfair labor practice. See, e.g., City of Reading v. Pennsylvania Labor Relations Board, 130 Commonwealth Ct. 397, 568 A.2d 715 (1989) (applying Section 1201 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, as amended, 43 P.S. § 1101.1201).
As Judge MacPhail articulated in a similar case, where the issue was job availability for a partially disabled claimant, Smith v. Workmen's Compensation Appeal Board (Futura)

*635 We do not imply that the Employer was in any way intending to subvert either the letter or the spirit of the Act. Nevertheless, this is a situation which has a unique potential for abuse if the employer can forever meet the burden of showing job availability by providing a modified job for a partially disabled claimant. It is our intention to find the middle ground between that situation and one where the employer is forever the insurer of a job for a partially disabled claimant.
Just as a "unique potential for abuse" did not interfere with the decision of a difficult issue in Smith, we too should here decide the merits of the case before us on the facts as found and determined by Referee Rapkin. I would reverse the Board and affirm the referee.
NOTES
[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 772, which states that a referee may reinstate benefits upon claimant's petition and upon proof that his disability has recurred.
[2] Claimant's Exhibit 2 from October 14, 1986 hearing, the December 4, 1985 discharge letter.
[3] The statements of the referee at the hearing and his opinion indicate that UPS filed a petition for termination of compensation on December 6, 1985. The certified record from the Board does not contain a copy of the petition for termination, and the docket entries do not reflect the filing of such a petition.
[4] Pa.R.A.P. 2116(a) states: "The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. . . . This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby." Pa.R.A.P. 2116(a) notwithstanding, this Court has chosen to address the present matter, because it involves an important issue of first impression.
[5] 77 P.S. § 772.
[6] We note that the referee in his fifth and sixth findings apparently and improperly shifted the burden of proof to claimant in this termination petition case.