Nelson **EDWARDS**, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD, (Sear's Logistic Services), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Nov. 22, 2000.
Decided April 3, 2001.

**806**

Kevin M. Walsh, Kingston, for petitioner.

Terrence E. Dempsey, Scranton, for re-spondent.

Before McGINLEY, Judge,
FRIEDMAN, Judge, and MIRARCHI,
Senior Judge.

MIRARCHI, Senior Judge.

Nelson Edwards (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the workers' compensation judge (WCJ) granting his claim petition and then suspending his disability benefits as of the subsequent termination of his employment. We affirm.

Claimant began working for Sear's Logistic Services (Employer) as a seasonal employee on August 21, 1995. On January 26, 1996, Claimant filed a claim petition, alleging that he was disabled due to a work-related lower back injury sustained on November 9, 1995. At a hearing before the WCJ, Claimant testified as follows to support his claim petition. While unloading sewing machines from a truck on November 9, 1995, Claimant felt a sharp pain in his back. Despite the pain, Claimant continued to work until November 14, 1995. On November 15, 1995, Claimant called off from work and informed Employer's manager of his work injury. The manager then called Claimant and asked him to come in to fill out an accident report and see a physician.

On November 16, 1995, Employer took Claimant to the Geisinger Medical Center emergency room. At the hospital, Claimant was examined by a physician and also took a drug screening test, as required by Employer's policy. Thereafter, Claimant was treated by Douglas R. Morgart, M.D., who is board-certified in emergency medicine. By letter dated November 28, 1995, Employer terminated Claimant's employment as of November 22, 1995 after receiving the result of the November 16, 1995 drug screening test indicating his use of illegal drug. Claimant testified that as of the hearing on March 28, 1996, he was still having problems with his back.

Claimant also presented the deposition testimony of Dr. Morgart. Dr. Morgart's initial impression after his first examination on November 22, 1995 was that Claimant sustained lumbosacral strain on November 9, 1995. Dr. Morgart prescribed pain medicine and released Claimant to light-duty work. Dr. Morgart opined that as of his last examination on February 23, 1996, Claimant still suffered from an acute, severe lumbosacral strain, but could perform sedentary work.

In opposition to the claim petition, Employer presented the testimony of Dr. James J. Heinz, a board-certified orthope-

dic surgeon, who opined that Claimant's remaining back pain was related to degenerative changes in his lower back and deconditioning. Employer also presented the testimony of its human resource specialist, Janet Yamus, that Employer had the written policy requiring employees to take a drug screening test prior to their employment and after any work injury requiring medical treatment; Employer explained the policy to all new employees during orientation; the policy is also contained in Employee Handbook received by the employees; under the policy, any employee, who has been employed for less than one year and tested positive for illegal drug use, is immediately discharged; Employer terminated Claimant's employment for failing the drug screening test after the medical review officer discussed the test result with Claimant on November 22, 1995; and, had Claimant not been discharged, Employer would have offered the sedentary position which was available in the human resources office with the same rate of pay. Claimant stipulated to the authenticity of the drug screening test result, but objected to its admission into evidence arguing that such evidence is irrelevant. The WCJ overruled Claimant's objection.

Accepting as credible the testimony of Claimant and Dr. Morgart, the WCJ found that Claimant sustained work-related lumbosacral strain on November 9, 1995 and that he was capable of performing sedentary work. The WCJ then accepted as credible the testimony of Employer's human resources specialist regarding Employer's drug screening policy and the availability of the sedentary position which Claimant was capable of performing. The WCJ found that Claimant's loss of earnings following the termination of his employment was due to his own action and unrelated to the work injury. The WCJ accordingly granted Claimant's claim petition, suspended his benefits as of the termination of his employment on November 22, 1995 and ordered Employer to continue to pay reasonable and necessary medical expenses incurred for Claimant's work injury. On appeal, the Board affirmed the WCJ's decision.

■ It is well established that a claimant has the burden of proving all the elements required for an award of workers' compensation benefits throughout the pendency of the claim petition, including the duration of work-related disability. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993).

■ Claimant challenges the WCJ's decision to suspend his benefits, contending that the evidence of his illegal drug use was prejudicial and irrelevant to his entitlement to benefits, and that Employer failed to establish that it actually offered the light-duty position within his medical restrictions.[1]

To support his contentions, Claimant relies on *United Parcel Service v. Workmen's Compensation Appeal Board (Portanova)*, 140 Pa.Cmwlth.626, 594 A.2d 829

---

1. This Court's scope of review is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth.436, 550 A.2d 1364 (1988). The appellate role in a workers' compensation case is not to reweigh the evidence or review the credibility of the witnesses: rather, the appellate court must simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992).

(1991), in which this Court held that the loss of earnings of the claimant, who was discharged because of misconduct committed before he sustained the work injury, should be deemed to have resulted from the work-related disability. In *United Parcel Service,* the employer did not raise the issue of the claimant's misconduct until he was discharged six weeks after the claimant sustained the work injury. The majority in that case stated that "allowing an employer to discharge an employee from a light-duty position because of misconduct committed prior to the employee's work-related injury creates too much potential for abuse." *Id.* at 832. The dissent disagreed, stating:

> [T]here is as much potential for abuse one way as there is the other; for example, an employee, once having suffered a compensable injury, might believe— rightly so under the majority's view— that he can do whatever he pleases and not be vulnerable to discharge....

*Id.* at 833.

Subsequent to our decision in *United Parcel Service,* the courts have consistently held that the only relevant issue in deciding whether the claimant's benefits must be suspended under Section 413 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772, is whether the claimant's loss of earnings was no longer the result of the work injury; if the claimant's loss of earnings is related to a factor other than the work injury, the claimant's benefits must be suspended. *See, e.g., Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.),* 550 Pa. 276, 705 A.2d 432 (1997) (the claimant's incarceration following the work injury); *Hertz–Penske Truck Leasing Co. v. Workmen's Compensation Appeal Board (Bowers),* 546 Pa. 257, 684 A.2d 547 (1996) (the employer's action forcing the claimant to resign due to his poor work performance); *Smith v. Workers' Compensation Appeal Board (Dunhill Temporary Systems),* 725 A.2d 1285 (Pa.Cmwlth.1999) (the claimant's action to voluntarily remove himself from the work force). Contrary to Claimant's argument, therefore, the evidence of the drug screening test result was relevant to the issue of whether his loss of earnings was no longer related to the work-related disability.

■ In this matter, Claimant stipulated to the authenticity of the drug screening test result. Claimant does not dispute the WCJ's findings that he was aware of Employer's policy requiring him to take the drug screening test after he reported the work injury and that his employment was terminated pursuant to Employer's policy calling for immediate discharge of any employee who has been employed for less than one year and tested positive for illegal drug use. Because Claimant was discharged for violating Employer's policy prohibiting a use of illegal drugs, his loss of earnings subsequent to the discharge was caused by his own action, not by the work injury.

■ Where, as here, it is established that the claimant's loss of earnings is no longer the result of the work-related disability, the employer is not required to establish the availability of an alternative job within the claimant's medical restrictions. *Banic; Inglis House; Smith.* Moreover, the WCJ accepted the testimony of Employer's witness and found that a sedentary position within Claimant's medical restrictions was available at the time of the termination of his employment.

Since the record supports the WCJ's decision to suspend Claimant's benefits, the order of the Board is affirmed.

## ORDER

AND NOW, this 3rd day of April, 2001, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

FRIEDMAN, Judge, Concurring.

I concur with the result reached by the majority. However, I believe that the following statement could be misleading:

> [T]he only relevant issue in deciding whether the claimant's benefits must be suspended under Section 413 of the Workers' Compensation Act[1] .... is whether the claimant's loss of earnings was no longer the result of the work injury; if the claimant's loss of earnings is related to a factor other than the work injury, the claimant's benefits must be suspended.

(Majority op. at 808.) If the claimant's loss of earnings is related to the claimant's discharge for misconduct, it may be relevant to examine whether the employer's discharge of the claimant was in good faith or was motivated only by a desire to avoid paying workers' compensation benefits. *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 560 Pa. 12, 742 A.2d 649 (1999).

In *United Parcel Service v. Workmen's Compensation Appeal Board (Portanova)*, 140 Pa.Cmwlth. 626, 594 A.2d 829, 832 (1991), this court held that where "a claimant is discharged because of misconduct which occurred, not only prior to the injury, but also prior to the payment of bene-

fits and the creation of a light-duty position, a claimant's loss of earnings shall be deemed to have resulted from a disability due to injury." In other words, in *United Parcel*, this court examined the facts and concluded that the employer's discharge of the claimant for misconduct was merely an attempt to avoid the payment of workers' compensation benefits to the claimant, suggesting that the claimant was not truly at fault with respect to the discharge.

The majority quotes the dissenting opinion in *United Parcel* and thereafter suggests that the majority opinion has been overruled by cases such as *Hertz–Penske Truck Leasing Company v. Workmen's Compensation Appeal Board (Bowers)*, 546 Pa. 257, 684 A.2d 547 (1996). (Majority op. at 807–08.) However, in *Vista International*, 560 Pa. at 25–26, 742 A.2d at 656 (emphasis added), our supreme court stated:

> *Hertz–Penske* does *not* stand for the proposition .... that fault is never relevant in a workers' compensation proceeding. Rather, it holds that fault is not *generally* relevant to the *initial assessment* of whether the claimant's burden of establishing a loss of earnings capacity attributable to a work-related injury has been satisfied.[2]

If the court's initial assessment is that the claimant's loss of earnings is a result of his discharge for misconduct, it is relevant to examine next whether the claimant was truly at fault or whether the employer was simply trying to avoid paying the claimant

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772.

2. The court explicitly rejected the employer's view of *Hertz–Penske*, which was that "an employer may achieve a suspension of workers' compensation benefits at any time following the occurrence of a disability by merely terminating the employee, without any fault-related assessment." *Vista International*, 560

Pa. at 26, 742 A.2d at 657. The court explained that such an "approach would require the suspension of benefits in a broad array of cases involving involuntary terminations that occur due to no fault of the claimant, for example, in circumstances involving plant closings." *Id.* at 27, 742 A.2d at 657.

workers' compensation benefits. *Vista International.*

Here, there is no question that the claimant was truly at fault when the employer discharged him. Indeed, the claimant stipulated to the authenticity of the positive drug screening test result. Accordingly, like the majority, I would affirm the suspension of the claimant's benefits.