IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William P. Corbett, Inc.,  :
               Petitioner  :
                    :
         v.  : No. 587 C.D. 2017
             : Submitted:  September 29, 2017
Workers' Compensation Appeal  :
Board (Gauthier),  :
               Respondent  :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI            FILED: October 26, 2017


        William P. Corbett, Inc. (Employer) petitions this Court for review of the Workers' Compensation Appeal Board's (Board) order affirming the Workers' Compensation Judge's (WCJ) decision granting benefits to Michael Gauthier (Claimant) and awarding penalties because Employer failed to timely respond to the workers' compensation claim.[1]  For the following reasons, we reverse.

---

[1] The WCJ also awarded Claimant 25 weeks of specific loss benefits for disfigurement due to the surgical scar on his neck, to be paid upon cessation of Claimant's entitlement to indemnity benefits.  This award is not before us.

## I.

## A.

The following are facts found by the WCJ unless otherwise noted. Claimant was the lead installer for Employer, a company that performs furniture and shelving installation. On April 2, 2012, Claimant was working at an Air Force base installing high metal shelving that required him to lift between 80 and 100 pounds. As he was installing shelving, Claimant felt a pinch in his right arm and his elbow tightened up, and he experienced a weakness in his bicep, tightness in his forearm, and numbness in his fingers. He informed another installer of his symptoms but continued to work. Eventually, Claimant went to the emergency room, where he was referred to Dr. Thomas Mackell (Dr. Mackell), who determined that the issue was in his neck.

On April 23, 2012, Claimant spoke to Bill Corbett (Corbett), the owner and president of Employer, about the injury. Claimant also provided Doug Kimenhour (Kimenhour), Employer's vice president who handled matters pertaining to human resources, with paperwork from the doctor because he was told that in order to have future appointments, he needed to have workers' compensation forms filled out.

Claimant continued to work for Employer between April 2012 and February 2013, during which time he claimed that he felt pain in his neck and the discomfort in his right arm spread to his left as well.

2

After treatment with Dr. Mackell, Corbett referred Claimant to Dr. Steven Barrer (Dr. Barrer), Corbett's brother-in-law. Dr. Barrer performed cervical surgery on Claimant in February 2013. After surgery, Claimant missed approximately a week-and-a-half of work and he continued to treat with Dr. Barrer. When Claimant returned to work following surgery, he had tightness in his forearm, hands, biceps and shoulders, and his right elbow acted up occasionally. He was given light-duty work.

After his injury, Claimant could no longer work the hours he previously worked. In August 2013, Claimant gave Employer a note from Grand View Hospital stating that he should not work from August 15 through August 18, 2013, but the note did not provide any reason for that restriction. Claimant then gave Employer a hand-written letter from a Dr. Robert Kallish, dated August 18, 2013, stating that Claimant was overwhelmed by personal problems and asking that he be excused from work for seven to ten days.

Around this time, Claimant had some issues with his family because his wife had become addicted to narcotic medications and he could not handle the situation. He was going to send his wife and children to Virginia and needed a personal loan to do so. Corbett gave Claimant cash for this purpose, as he had done previously for other needs. In early September 2013, Claimant moved to Boston to live with his mother. When he decided to move, Claimant was still on light-duty and had not formally filed a claim for workers' compensation. According to Claimant, he could no longer afford the house he was currently living in because his neck injury was so painful that he missed work regularly.

On September 11, 2013, Michelle Clark (Clark), who handles certain personnel matters for Employer, called Claimant because Employer wanted to know if Claimant was returning to work. Claimant advised Clark that he was having many personal issues and reported that he was in Boston trying to get his head together. When asked about his intention regarding returning to work, Claimant responded that he thought he lost his job because he just left and did not give Corbett any information about what was going on. Clark told Claimant that he still had his job but he needed to keep in contact with Kimenhour. Claimant said he was not ready to come back to work. Claimant acknowledged that a physician never advised him that he could not perform light-duty work. When stating that he felt he was not ready to return to work, Claimant did not have any medical excuse that he could not do light-duty work. On September 23, 2013, having not heard back from Claimant, Employer terminated his employment.

In July 2014, Claimant began working for another company in Boston, making more money and performing light-duty work. Claimant offered no medical testimony that his work-related injury prevented him from performing light-duty work for this employer. He acknowledged that after quitting, he had been out driving along the coast for two weeks in August 2014, and that he drove from Florida to Virginia at the end of August 2014 to take his son to college. The WCJ did not address these facts.

On October 21, 2014, Claimant filed a claim petition seeking partial disability benefits from April 2, 2012, to August 21, 2013, and total disability from

August 22, 2013, to July 14, 2014.[2]  He also filed a penalty petition alleging that Employer failed to issue a notice of denial (NCD) or other response to his claim within 21 days of learning about his disability, which Claimant contended occurred on April 23, 2012.

Employer filed an NCD on October 30, 2014, alleging that Claimant's injury was not work-related.  Claimant was terminated from his new job in December 2014 for missing too many days, which he claims was due to the pain in his neck.

Over the next few years, the WCJ held several hearings on the matter and counsel took several depositions.  Claimant's expert medical witness, Dr. Gene Salkind (Dr. Salkind), a board certified neurosurgeon who saw Claimant twice prior to surgery, opined that Claimant's injury was due to a C5-6 disc/osteophyte complex exacerbated by trauma from Claimant's work.  When he examined him in March 2015, he stated that Claimant had fully recovered from his work injury, but he should be on light-duty with no lifting of greater than 20 pounds because he had undergone a single-level anterior discectomy and fusion.

Employer's expert witness, Dr. Neil Kahanovitz (Dr. Kahanovitz), board certified in orthopedic surgery, disagreed with Dr. Salkind, stating that Claimant's neck injury and resultant surgery was not work related because he

---

[2] Claimant initially sought partial disability from April 23, 2012, and full disability as of August 21, 2012, but later amended his claim to reflect the dates above.

found no evidence that Claimant had suffered any significant neurologic compression in his C5-6 disc/osteophyte complex.

**B.**

Regarding when Employer became aware of Claimant's injury, Clark testified by deposition that she discussed Claimant's injury in a conversation with Kimenhour on April 23, 2012, stating:

> After we had this conversation with him, [Kimenhour] and I decided we probably should call our insurance broker just to see what we needed to do, you know, did we need to file any paperwork or anything. And we talked to [the insurance broker] . . . and he said let's just fill out a basic form just to have this on file, that this is what he, you know, was stating just in case it ever came up for the future, at least we had something on file.

(Reproduced Record (R.R.) at 172a.) Clark said that in May 2012, Employer received a bill from the hospital for Claimant's visit on April 23, 2012:

> [W]e got the paperwork, you know, I got this bill from the hospital and I didn't know what it was. So I initially called her to say, you know, I don't know what's going on here, you know, what do we need to do here and, you know, her conversation was you need to find out what's going on and, if need be, you need to file a workers' comp claim.

(R.R. at 187a-88a.) Claimant's counsel pressed Clark:

6

Q: So as of May 22nd or so, you were aware that there was possibly a work-related claim that you needed to report on behalf of [Claimant]; is that fair?

A: Correct.

(R.R. at 189a.)

At Corbett's deposition, he discussed a conversation he had with Claimant regarding his injury, as follows:

[T]here was never a "Hey, I hurt myself on this job. I need workmens' comp. I need this, I need that." We had a good talking relationship, and we kept in close touch. And, you know, I'm not saying that I wasn't aware that he had some ailments, but I could rattle mine off as well.

(R.R. at 210a.) Claimant also addressed a conversation he had with Corbett regarding his injury in his own deposition:

I believe in the discussion I had with them in May, I spoke with them about this workers' compensation situation and what was going on. And to the best of my recollection, it's been so long ago, I do remember [Corbett] sitting and telling me that if I was to put this on workers' comp, his premium could go up. In doing that—we had very sensitive contracts with, say, Merck and other companies like that—that if your premium was high as a company, you could lose your contract. They didn't want any safety issues inside their buildings.

(R.R. at 223a.)

7

## C.

The WCJ granted Claimant's claim petition, finding that Claimant and his expert witness, Dr. Salkind, to be credible. Where their testimony conflicted with that of Claimant and Dr. Salkind, the WCJ found Employer and all its witnesses not to be credible. The WCJ also issued a two percent penalty against Employer for failure to issue a NCD or other response in a timely fashion.

The WCJ granted partial benefits from April 23, 2013, through August 21, 2013, "temporary total disability benefits for the period of time Claimant was out of work for surgery,"[3] and temporary total disability benefits from August 22, 2013, through July 14, 2014, at which time Claimant began working again with the new employer. The WCJ also granted ongoing total disability benefits as of December 30, 2014, when Claimant was discharged by his new employer for missing too many days of work. The WCJ failed to make a specific finding as to whether or not Claimant left that job because of his injury or for personal reasons.

Employer appealed to the Board, arguing that benefits should not have been granted after September 2013 because Claimant left his job voluntarily due to personal problems rather than his work injury. The Board affirmed, and this appeal followed.[4]

---

[3] (WCJ's Order dated April 6, 2016.)

[4] Our scope of review of the Board's decision is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated or whether an error of law was committed. *Repash v. Workers' Compensation Appeal Board (City of Philadelphia)*, 961 A.2d 227 (Pa. Cmwlth. 2008). Credibility determinations are within **(Footnote continued on next page…)**

**II.**

On appeal, Employer does not dispute that Claimant's injury was work related, but instead contends that any loss of earnings Claimant incurred was caused by leaving his employment and moving out-of-state due to his personal problems.

Under the Workers' Compensation Act (Act),[5] a claimant seeking disability benefits must prove that he or she suffered a disability and the disability was caused by a work-related injury. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 498 A.2d 800, 802 (Pa. 1985). To prove a disability, the claimant must show not merely physical impairment, but loss of earning power. Section 306(b) of the Act, 77 P.S. § 512.[6] "[F]or the purposes of receiving workmen's compensation, 'disability' means loss of earning power, and

---

**(continued…)**

the exclusive province of the WCJ and findings of fact may only be overturned if they are arbitrary or capricious. *Lehigh County Vo-Tech School v. Workers' Compensation Appeal Board (Wolfe)*, 652 A.2d 797, 800 (Pa. 1995).

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

[6] The term "earning power" is determined:

> by the work the employe is capable of performing and shall be based upon expert opinion evidence. . . . Disability partial in character shall apply if the employe is able to perform his previous work or can . . . engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth.

77 P.S. § 512(2).

9

thus although a claimant may suffer a work-related physical disability, it is only if that physical disability occasions a loss of earnings that a worker will be 'disabled' under the meaning of the Act and will be entitled to receive compensation." *Bissland v. Workmen's Compensation Appeal Board (Boyertown Auto Body Works)*, 638 A.2d 493, 495 (Pa. Cmwlth 1994). A claimant must prove through unequivocal medical testimony that the work-related injury caused a loss of earning power. *Fotta v. Workmen's Compensation Appeal Board (U.S. Steel/USX Corp. Maple Creek Mine)*, 626 A.2d 1144 (Pa. 1993).

If an employer has provided work within the claimant's physical limitations and has shown that the claimant was terminated for conduct evidencing bad faith, a lack of good faith or misconduct, disability benefits must be denied regardless of whether the claimant has a physical disability caused by the work-related injury. *Sauer v. Workers' Compensation Appeal Board (Verizon Pennsylvania, Inc.)*, 26 A.3d 531 (Pa. Cmwlth. 2011); *Edwards v. Workers' Compensation Appeal Board (Sear's Logistic Services)*, 770 A.2d 805 (Pa. Cmwlth. 2001). Under such circumstances, the claimant is not entitled to workers' compensation disability benefits because "his loss of earnings subsequent to the discharge was caused by his own action, not by the work injury." *Edwards*, 770 A.2d at 808; *see also Campbell v. Workers' Compensation Appeal Board (Foamex)*, 707 A.2d 1188, 1191 (Pa. Cmwlth. 1998) (holding that a claimant who voluntarily leaves employment because he no longer had adequate transportation did not qualify for workers' compensation benefits because the reason for his loss of earning power had nothing to do with his disability).

10

In this case, while it is no longer disputed that Claimant incurred a work-related injury, based on the facts found by the WCJ, all the evidence establishes that Claimant left his light-duty job because of personal problems and not due to any work-related injury. Claimant acknowledged that when he moved to Boston, he was not informed by any doctor that he could no longer perform light-duty work. Regarding the benefits awarded as of December 30, 2014, when he was terminated from a light-duty position with his employer in Boston due to excessive absenteeism, Claimant contends that his absences were, in fact, due to pain in his neck. Again, no medical evidence was offered that he could not perform that light-duty work. To the contrary, Dr. Salkind, Claimant's medical witness who examined him after his discharge, testified that Claimant was capable of performing light-duty work.

However, the evidence does indicate that Claimant may have suffered a loss of earning power because, after the injury, he could no longer work the number of hours he had worked before the injury. Accordingly, we remand the matter to the WCJ to determine if Claimant suffered a loss of earning power for that reason.

**III.**

Employer also argues that it did not receive adequate notice of Claimant's injury and should not have been penalized under Section 435(d)(i) of the Act,[7] for its delay in issuing an NCD to Claimant because Claimant did not file

---

[7] Section 435(d)(i) of the Workers' Compensation Act, added February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 991(d)(i).

a claim petition until October 21, 2014, and Employer issued an NCD on October 30, 2014. The WCJ found that Employer had notice of Claimant's injury as early as April 23, 2014, when Claimant had discussions with Corbett and Employer's HR representatives.

Section 406.1 of the Act[8] requires prompt payment of compensation or further notice of the decision within 21 days after the employer becomes aware of the injury. Specifically, the Act directs that the employer "shall promptly investigate each injury reported or known to the employer . . . ." Section 406.1(a) of the Act, 77 P.S. § 717.1(a). There is no requirement that a claim petition be filed in order to trigger this responsibility. As we have explained, when an employer becomes aware of a claimant's injury, even though the claimant did not file a claim petition, the employer "clearly [is] required to file an NCP or NCD within 21 days of receiving notice of Claimant's injury." *See Brutico v. Workers' Compensation Appeal Board (US Airways, Inc.)*, 866 A.2d 1152, 1155 (Pa. Cmwlth. 2004).

Clark's testimony establishes that Employer had notice of Claimant's work injury on April 23, 2012, when Claimant presented Kimenhour with paperwork from his doctor indicating that he needed to fill out workers' compensation forms before he could see the doctor again. Clark also testified that she was aware that it was a workers' compensation matter because she received a bill from the hospital. Being on notice, Employer had a duty to respond with an

---

[8] Section 406.1 of the Workers' Compensation Act, added February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 717.1.

12

NCD, or other response, within 21 days.  Because Employer did not do so, the WCJ did not abuse her discretion when awarding a penalty.

_____

DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William P. Corbett, Inc.,          :
                Petitioner          :
                                    :
        v.                          : No. 587 C.D. 2017
                                    :
Workers' Compensation Appeal        :
Board (Gauthier),                   :
                Respondent          :

**O R D E R**

AND NOW, this 26th day of October, 2017, the order of the Workers' Compensation Board of Appeals in the above-captioned matter is reversed in part and remanded to the Workers' Compensation Judge to determine any loss of earning power in accordance with the opinion.

Jurisdiction relinquished.

_____
DAN PELLEGRINI, Senior Judge