IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Olivia Brooks,                                  :
                            Petitioner          :
                                                :
            v.                                  :    No. 156 C.D. 2021
                                                :    Submitted: July 22, 2022
Brown's Super Stores (Workers'                  :
Compensation Appeal Board),                     :
                            Respondent          :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                       FILED: November 4, 2022


        Olivia Brooks (Claimant) has petitioned this Court to review an
adjudication of the Workers' Compensation Appeal Board (Board), affirming the
decision of the Workers' Compensation Judge (WCJ).  The WCJ denied Claimant's
petition for workers' compensation (disability) benefits under the Workers'
Compensation Act (Act).[1]  Claimant argues that the WCJ erred in finding that she
had not met her burden of proving disability or injury and that the WCJ improperly
weighed the evidence. After careful consideration, we affirm.

                              **BACKGROUND**[2]

        In December 2017, Claimant began working as a deli clerk for Brown's
Super Stores (Employer).  On January 9, 2018, a box fell from a shelf onto Claimant

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.
[2] Unless stated otherwise, we adopt the factual background for this case from the Decision
of the WCJ, entered August 14, 2019, which is supported by substantial evidence of record.  *See*
WCJ Decision, 8/14/19, Findings of Fact (F.F.) 1-17.

at work (the Incident). The Incident and Claimant's behavior in the 20 minutes thereafter were captured by Employer's surveillance footage (Video).

Employer issued a Notice of Temporary Compensation Payable (NTCP) accepting the injury as a cervical and lumbar strain and timely filed a *medical-only* Notice of Compensation Payable (NCP). Thereafter, Claimant filed a claim petition for temporary total disability benefits, alleging injuries to her neck, back, and head. Employer denied the allegations of injury or disability but stated that if an injury did occur, it has since ceased, and was not work-related.

On June 21, 2018, Dr. John A. Pasquella, D.O., conducted an independent medical examination (IME) on Claimant, finding that she could return to her pre-Incident work because she had fully recovered from her Incident-related injuries of a head contusion and aggravation of a cervical and lumbar sprain/strain.

At the WCJ's January 28, 2019 hearing, Claimant presented both deposition and live, in-person testimony. In her deposition, Claimant testified that she experienced "blackness," nausea, aches, and sharp neck and head pain from the box impact and claimed that she immediately notified her manager. About a month after the Incident, Claimant tried to perform light-duty work for Employer but stopped due to pain. Claimant testified that due to worsening symptoms following the Incident, she became depressed, contemplated leaving school, and reduced her independent notary services from two to one day a week. Nevertheless, at the time of this May 2018 deposition, Claimant expressed that she could now perform light-duty work if offered. She admitted that she sustained prior back injuries from several unrelated accidents but asserted that the resulting injuries had become manageable when she began working for Employer.

Claimant presented updated testimony at the hearing, stating that she had completed a master's degree program in November 2018. Claimant had begun a suitable part-time job in January 2019, that was less physical than her prior job with Employer. Although her symptoms have improved, Claimant testified that she continues to take pain medication.

Claimant also presented deposition testimony from Dr. Richard Mandel, M.D., who opined that Claimant could not resume her pre-Incident job but could perform sedentary work as of October 2018. He admitted that his opinions were primarily based on Claimant's subjective reporting and that he could not be sure whether disk herniations, visible in magnetic resonance imaging (MRI) results, were caused by the Incident or were preexisting injuries.

Employer presented the Video, and depositions from its medical expert, Dr. Pasquella, and its risk manager. Dr. Pasquella testified that the immense force needed to herniate disks as revealed by an MRI is not depicted on Video. Further, Dr. Pasquella suggested that viewing post-injury behavior can be as important as viewing the injury itself. According to Dr. Pasquella, the Video did not show any disorientation or serious injury to Claimant. Employer's risk manager authenticated the Video and testified that Employer presented Claimant with three post-Incident job offers.

The WCJ found that Claimant was not injured from the Incident and, thus, failed to establish her burden of proving disability under the Act. Although the Video shows Claimant rubbing her head after the Incident, the WCJ found that it reveals the box "at most[,] grazes" her head and shows no signs of loss of consciousness. WCJ Decision, 8/14/19, F.F. 8a. Rather, the WCJ found, the Video shows Claimant talking with coworkers, doubled over laughing three times, and

3

continuing work by washing and wrapping produce, after the Incident. The WCJ deemed Claimant's testimony was "totally inconsistent" with the Video and that she had exaggerated her injury. *Id*., F.F. 9. The WCJ found that Claimant's demeanor and composure did not support her claims and her lack of credibility "completely erodes" her testimony. Further, according to the WCJ, Claimant could not have notified her manager as claimed because the Video shows her primarily remaining in her workstation after the Incident. *Id*. The WCJ also emphasized that despite her inability to complete a light-duty job, Claimant graduated school, continued her notary services, and began working at another job. The WCJ also rejected Claimant's expert testimony because it was primarily based on Claimant's subjective reporting. Conversely, the WCJ found Employer's expert, who had reviewed more evidence, to be "far more" credible. Accordingly, the WCJ denied Claimant's petition for disability benefits. *Id*., F.F. 12. The Board affirmed the WCJ's decision on appeal. Claimant petitions this Court for review.[3]

## ISSUES

Claimant argues that the WCJ erred in finding that she did not suffer an injury because there is "overwhelming evidence" of her injuries, including the *medical-only* NCP, MRI results, and the IME findings of Dr. Pasquella. Claimant's Br. at 10-13, 15. Claimant also avers that the WCJ afforded "undue weight" to the Video and cannot simply find her ineligible for benefits because she is seen laughing in response to her coworker's joke, which was made to comfort her, after the Incident. *Id*. at 14-15. For the following reasons, we disagree.

---

[3] In workers' compensation appeals, our review is limited to determining whether an error of law was committed, constitutional rights were violated, or necessary findings of fact are supported by substantial evidence. *Montano v. Advance Stores Co., Inc. (Workers' Comp. Appeal Bd.)*, 278 A.3d 969, 976 n.3 (Pa. Cmwlth. 2022).

4

**DISCUSSION**

The Act compensates claimants who have suffered disabilities from work-related injuries. *Edwards v. Workers' Comp. Appeal Bd. (Sear's Logistic Servs.)*, 770 A.2d 805, 808 (Pa. Cmwlth. 2001). A "disability" under the Act is not synonymous with a physical work-related injury because proof of injury, alone, is insufficient to establish eligibility. *Id.* To satisfy her burden of proof, a claimant must not only prove injury, but where not obvious, demonstrate the "causal relationship" of the injury and her work and show that the injury resulted in a loss of earning power. *Kurpiewski v. Workers' Comp. Appeal Bd. (Caretti, Inc.)*, 202 A.3d 870, 880 (Pa. Cmwlth. 2019).

*A. The WCJ's finding of "no injury" is proper*

Claimant contends that the WCJ erred in denying her claim petition. Claimant's Br. at 10. She advances three arguments in support of this contention. First, Claimant argues that the WCJ's finding of "no injury" contradicts Employer's acknowledgment of her injury in its issuance of a *medical-only* NCP. *See id.* at 10-11. Second, Claimant maintains, the results of Dr. Pasquella's IME confirmed that she suffered a compensable injury. *See id.* at 11-12. Third, Claimant asserts that the WCJ erred in rejecting her MRI results. *See id.* at 13. According to Claimant, this evidence established, at minimum, that she sustained injuries of a head contusion, lumbar strain, cervical sprain, and aggravation of cervical and lumbar sprain/strain injuries, from the Incident. Claimant's Br. at 13. We disagree.

An NTCP allows an employer, uncertain of a claim or the extent of its liability, to initiate compensation without admitting liability. 77 P.S. § 717.1(d)(1).[4] Thereafter, an employer is given 90 days to accept or decline liability before an

---

[4] Section 406.1(d)(1) of the Act, added by the Act of February 8, 1972, P.L. 25, 77 P.S. §717.1(d)(1).

NTCP automatically converts to an NCP.  77 P.S. § 717.1(d)(6).  An employer's issuance of a *medical-only* NCP stops temporary compensation and prevents an automatic NCP conversion. *Raymour & Flanigan v. Workers' Comp. Appeal Bd. (Obeid)*, 264 A.3d 817, 822 (Pa. Cmwlth. 2021).  In other words, by issuing a *medical-only* NCP, an employer acknowledges injury and accepts liability for associated medical payments, but "nothing more." *Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Servs., Inc.)*, 126 A.3d 394, 401-02 (Pa. Cmwlth. 2015).  Importantly, a *medical-only* NCP does not concede a claimant's disability or accept liability for wage loss benefits.  A claimant still maintains "the burden of proving a disabling work injury by competent medical evidence." *Id.* at 402.

Here, because Employer timely filed its *medical-only* NCP, it never accepted liability for Claimant's disability. *See* 77 P.S. § 717.1(d)(6).  Further, approximately one month later, Employer denied the existence of Claimant's injury in its answer to her petition.  *See* Certified Record (C.R.), Employer's Answer, (3/9/18), at 13-16. Thus, we discern no error in the WCJ's finding that Claimant did not establish injury or disability based on her review of Employer's *medical-only* NCP.  *See Raymour*, 264 A.3d at 822; *Ingrassia*, 126 A.3d at 401-02; 77 P.S. § 717.1(d)(6).

Claimant's second argument, that the results of Dr. Pasquella's IME establish her eligibility for benefits under the Act, is also misplaced. An employer may successfully terminate a claimant's benefits where its medical expert "recognize[s] the work injury as [described] in the [NCP] and opine[s] that the claimant has fully recovered from that injury." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1199 (Pa. Cmwlth. 2007).[5]  Here, Dr. Pasquella

---

[5] Although this case does not involve a termination petition, we find the reasoning in *Elberson* is instructive.

diagnosed Claimant with a head contusion and aggravation of a cervical and lumbar sprain/strain but opined that Claimant had fully recovered from the injury. C.R. at 367, IME (6/21/18). Therefore, the WCJ's "no injury" finding was not in error but rather is supported by substantial evidence. *See Elberson*, 936 A.2d at 1199.

Lastly, Claimant's MRI results are not dispositive evidence of a compensable injury. Where there is "no obvious relationship between the disability and the work-related cause, unequivocal medical testimony is required to meet [a claimant's] burden" of proving disability under the Act. *Frankiewicz v. Workers' Comp. Appeal Bd. (Kinder Morgan, Inc.)*, 177 A.3d 991, 995 (Pa. Cmwlth. 2017). Here, no unequivocal medical testimony exists of Claimant's MRI results, as she appears to suggest. Although both experts agreed that the MRI results reveal disk herniations, neither Claimant's nor Employer's medical expert confirmed this was caused by the Incident. Dr. Mandel testified that he could not be certain of the cause of the herniations, *see* C.R., at 223-24, Notes of Testimony (N.T.), (10/25/18), at 28-29, whereas Dr. Pasquella opined that could not have been caused by the Incident and must be the result of preexisting injuries. Supplemental Record at 32, N.T., (12/10/18), at 30. As the MRI results are insufficient to establish causation between the injury and the Incident, the WCJ did not err in finding no injury occurred. *See Frankiewicz*, 177 A.3d at 995.

### B. *The WCJ's discretion to weigh evidence is not reviewable*

Claimant also argues that the WCJ afforded too much weight to the Video, specifically Claimant's post-Incident laughter, in finding her ineligible for benefits. A WCJ has exclusive authority over questions of credibility and evidentiary weight. *Colagreco v. Workers' Comp. Appeal Bd. (Vanguard Grp. Inc.)*, 232 A.3d 971, 980 (Pa. Cmwlth. 2020). This Court may only "overturn a credibility

7

determination if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational." *Id*. It is clearly established that "neither the Board nor the Court may review the evidence or reweigh the WCJ's credibility determinations." *Pa. Uninsured Emps. Guar. Fund v. Workers' Comp. Appeal Bd. (Lyle)*, 91 A.3d 297, 303 (Pa. Cmwlth. 2014). A finding of capricious disregard occurs in the rare instance where a WCJ "deliberately ignores relevant, competent evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 861 A.2d 137, 144 (Pa. Cmwlth. 2004). Such finding does not occur where the WCJ expressly considers and rejects evidence, *see Williams*, as is the case here.

In the instant matter, the WCJ thoroughly reviewed and weighed the evidence presented. *See* WCJ Decision, 8/14/19, F.F. 1-17. The WCJ considered and specifically rejected Claimant's deposition and live testimony as not credible. In considering the parties' expert testimony, the WCJ found Employer's expert, Dr. Pasquella, to be more credible, as he had considered more objective evidence. Finally, the WCJ found the Video to be compelling and convincing evidence that undermined Claimant's evidence. Nothing in the record reflects that the WCJ's actions were so flawed or irrational as to constitute arbitrary and capricious findings. Therefore, the weight the WCJ assigned to the Video is not reviewable by this Court on appeal. *Colagreco*, 232 A.3d at 980.[6]

---

[6] To the extent it is raised, Claimant's argument that the WCJ misjudged her credibility is also without merit. Claimant's Br. at 14-15. Credibility determinations are the "quintessential function" of the WCJ as factfinder, "particularly one who sees and hears the testimony." *See Kasper v. Workers' Comp. Appeal Bd. (Perloff Bros., Inc.)*, 769 A.2d 1243, 1246 (Pa. Cmwlth. 2001). These determinations are not subject to our review on appeal. *Colagreco*, 232 A.3d at 980.

## CONCLUSION

Substantial evidence supports the WCJ's determination that Claimant did not sustain a compensable injury from the Incident and, thus, is not entitled to disability benefits under the Act. To the extent Claimant disputes the WCJ's findings, we note that issues of credibility and evidentiary weight are within the sole discretion of the WCJ. Thus, we affirm.

 

_____
LORI A. DUMAS, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Olivia Brooks,                :
          Petitioner    :
                    :
        v.           :   No. 156 C.D. 2021
                    :
Brown's Super Stores (Workers'  :
Compensation Appeal Board),   :
          Respondent  :

# **O R D E R**

AND NOW, this 4th day of November, 2022, the order of the Workers' Compensation Appeal Board, entered January 28, 2021, in the above-captioned matter is AFFIRMED.

 

LORI A. DUMAS, Judge